# In the United States Court of Federal Claims

**FOR PUBLICATION**

No. 21-1786C
(Filed: October 18, 2023*)

|   |   |
|---|---|
| **ADVANCE BUSINESS CAPITAL, LLC** (d/b/a Triumph Business Capital), | ) ) ) |
| *Plaintiff,* | ) ) ) |
| v. | ) ) |
| **UNITED STATES**, | ) ) |
| *Defendant.* | ) ) ) |

*Michael J. Schrier*, Husch Blackwell LLP, Washington, DC, for plaintiff. With him on the briefs were *Jared A. Ullman* and *Michael W. Ullman*, Ullman & Ullman, PA, Boca Raton, FL.

*A. Bondurant Eley*, Senior Litigation Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC, for defendant. With her on the briefs were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, and *Patricia M. McCarthy*, Director, and *Deborah A. Bynum*, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC.

**DISCOVERY ORDER**

**BONILLA, Judge**.

On August 18, 2023, plaintiff Advance Business Capital, LLC (d/b/a Triumph Business Capital) [hereinafter "plaintiff" or "Triumph"], filed a Motion for Judicial Determination of Privilege. *See* ECF 55. Specifically, plaintiff asks the Court to

---

* This decision was initially filed under seal on October 3, 2023, in accordance with the Protective Order and Stipulated Clawback Agreement and Federal Rule of Evidence (FRE) 502(d) Order filed in this case, to allow the parties to propose redactions. No proposed redactions were filed.

overrule defendant's assertion that an email sent from a United States Postal Service (USPS) in-house lawyer to other USPS lawyers, executives, and managers and their direct reports–inadvertently produced in discovery–is privileged and thus subject to the clawback provisions of the Protective Order and Stipulated Clawback Agreement and FRE 502(d) Order entered in this case as well as Rule 26(b)(5)(B) of the Rules of the United States Court of Federal Claims (RCFC).  Seeking to distinguish the contested email from traditionally protected "legal advice," plaintiff first points to the apparent "business decision" contemplated therein: USPS's ability to rely on third-party Postal Fleet Services, Inc. (PFS) "in the middle of election mail and peak season operations."  *See* ECF 55-2 at 7.  Plaintiff next claims USPS waived the asserted attorney-client privilege by putting the legal advice "at issue" and/or by sharing the email with "lower-level managers" who lacked a need-to-know the information.  *See* ECF 55-1 at 18–19.  At a minimum, plaintiff asserts a portion of the email is discoverable as "underlying facts" rather than wholly subsumed within a privileged communication.

Opposing the motion and asserting its right to claw back the contested email, defendant maintains the document is a quintessential attorney-client privileged communication.  Highlighting the genesis of the email at issue, defendant notes a USPS in-house lawyer penned the communication in direct response to a letter from plaintiff's attorney, wherein the prospect (or threat) of legal action was made in no uncertain terms.  Against this backdrop, defendant further posits that any business considerations in the email, along with the portion characterized by plaintiff as "underlying facts," were inextricably intertwined with in-house counsel's broader assessment of the agency's litigation risk.  Addressing plaintiff's proffered import and interpretation of the email, defendant disputes the waiver-based contentions as misapplying the law of waiver and mischaracterizing defendant's asserted defense.

For the reasons set forth below, defendant's assertion of attorney-client privilege and demand to claw back the contested email are valid.  Accordingly, plaintiff's motion is DENIED, and the email and all copies thereof must be returned, destroyed, or properly redacted in accordance with the clawback provisions of the Protective Order and Stipulated Clawback Agreement and FRE 502(d) Order entered in this case.

"The attorney-client privilege protects the confidentiality of communications between attorney and client made for the purpose of obtaining legal advice." *Genetech, Inc. v. U.S. Int'l Trade Comm'n*, 122 F.3d 1409, 1415 (Fed. Cir. 1997) (citations omitted).  Although not absolute, the privilege is designed to facilitate and foster candid communications between lawyers and their clients.  *See Amer. Std. Inc. v. Pfizer Inc.*, 828 F.2d 734, 745 (Fed. Cir. 1987).  Relevant here, "[c]ommunications by the Department of Justice to a client agency and by that agency's own attorneys to non-attorney personnel seeking or being provided with legal advice are entitled to protection under the attorney-client privilege." *Deseret Mgmt. Corp. v. United States*,

2

76 Fed. Cl. 88, 91 (2007) (citing cases).  Tempering an overly broad application of the privilege, however, this Court explained:

> The attorney-client privilege only affords protection to confidential communications seeking or rendering legal, rather than business, advice.  "Only when an attorney is giving advice concerning the legal implications of conduct, whether past or proposed, is the privilege properly invoked."  For the privilege to apply, "[l]egal advice must predominate . . . .  The privilege does not apply where the legal advice is merely incidental to business advice."

*Pacific Gas & Elec. Co. v. United States*, 69 Fed. Cl. 784, 811 (2006) (internal citations omitted).

In this case, on October 8, 2020, counsel for Triumph, Michael W. Ullman, sent a letter to USPS Headquarters contesting "USPS' decision to re-route payments from Triumph to PFS."  *See* ECF 58-2 at 50.  The correspondence–tantamount to a cease and desist letter–was emailed to the attention of three USPS executives: Chief Financial Officer and Executive Vice President Joseph Corbett, Vice President of Supply Management Mark Guilfol, and Executive Manager of Surface Transportation Bridgett M. Rice.  *Id.* at 49.  In setting forth Triumph's legal position, Mr. Ullman explained:

> The immediate issue that has arisen and that now prompts the issuance of this letter, is that it has come to Triumph's attention that the USPS at some point, and without Triumph's knowledge or consent, unilaterally elected to cease remitting payments to Triumph, as assignee of all rights to receive payment, that were due and owing for the factoring client motor freight services, although it had previously honored both the Covenant and Triumph Notices of Assignment.  Unfortunately, USPS'[s] actions appear to have and continue to jeopardize Triumph's right to the receipt of payment on Purchased Accounts of a value believed to be not less than Thirty Four Million Two Hundred Fifty One Thousand Five Hundred Eighty Seven Dollars [sic] ($34,251,587.00) and which damages appear to be growing daily.
>
> Our office very much hopes that it will not be necessary for us to commence suit against the USPS, whether in a United States District Court in connection with Triumph's right to seek relief for payments made over its Notice of Assignment, or, in the United States Court of Federal Claims in connection with yet-to-be paid Accounts.

ECF 58-2 at 50–51.  The letter was referred to the USPS Law Department.

By letter dated October 22, 2020, USPS in-house lawyer Bryan R. King responded to Mr. Ullman's correspondence. In sum and substance, Mr. King relayed that the tendered assignment of payments to Triumph (from Covenant) did not comply with the terms of the Assignment Clause in the existing contracts between USPS and PFS and Stageline.[1] Upon this premise and citing the lack of a valid contractual relationship between USPS and Triumph, Mr. King asserted that the recent payments to Triumph under the non-conforming assignments "were made in error." *See* ECF 55-2 at 20–21.

Prior to sending the USPS response to Triumph's counsel, another USPS in-house lawyer, Michael A. Lewis, shared the draft October 21, 2020 letter with other USPS in-house lawyers, the three USPS executives to whom Mr. Ullman addressed his October 8, 2020 letter, and several managers and their direct reports[2] along with the following note:

> [General Counsel] Tom [Marshall] has approved this draft letter to Triumph's attorney, which we plan to send today, letting them know that we are not going to honor the assignment.
>
> As we discussed, and like all our other options, this approach is risky. Triumph could file suit and argue that we waived the Assignments Clause by paying Triumph directly for one month. They could also argue that we've established a course of conduct that demonstrates that we don't require the documentation that the Clause requires. We have good

---

[1] PFS and Stageline are companies that provided freight transportation services to USPS. In 2018 and 2020, PFS and Stageline entered into factoring agreements with Covenant Transport Solutions (a/k/a Transport Financial Services) ["Covenant"], in which PFS and Stageline assigned to Covenant their rights to payments under certain USPS contracts. On July 24, 2020, Triumph sent USPS a letter, signed jointly by Triumph and Covenant representatives, wherein Triumph asserted its claim to PFS's and Stageline's payments.

[2] Reviewing the record presented and electronically searching publicly available databases, the Court determined Mr. Lewis's October 21, 2020 email was addressed to the following USPS employees: Executive Vice President and Chief Financial Officer Joseph Corbett; General Counsel Thomas J. Marshall; Chief Commerce and Business Solutions Officer and Executive Vice President Jakki Krage Strako; Chief Logistics Officer and Executive Vice President Kelly R. Abney; Vice President, Controller Cara M. Greene; Assistant Controller Ryan V. Samaroo; Vice President, Supply Management Mark A. Guilfol; Executive Manager of Surface Transportation Bridget M. Rice; Manager of Transportation Control Douglas G. Veatch; Vice President, Logistics Robert Cintron; Engineering and Operations Executive Brent A. Raney (now-retired); Contracting Officer Antoine L. Slaughter; USPS Counsel Bryan R. King; and Deputy General Counsel Keith E. Weidner. Mr. Guilfol subsequently forwarded the email to: Manager of Transportation Services Category Management Center (CMC) Nicholas Faiola; Director of Supply Chain Management Strategies Donna L. Schoenbeck; Executive Administrative Assistant Barbara J. Council; Executive Administrative Assistant Kim A. Rice; Manager, Policy, Compliance & Audit, Supply Management Infrastructure, and Supply Management Robert D. D'Orso; and Purchase and Supply Manager Susan A. Witt.

4

> counter-arguments to those points, but Triumph's case would not be frivolous.
>
> By paying PF[S] directly in October, however, we believe we are mitigating or minimizing a much greater risk, which is that PF[S] will likely run out of cash and stop operating in the middle of our election mail and peak season operations if we pay Triumph. PF[S] has assured us on several occasions that that is what would happen if we turned the assignment back on.
>
> If anyone has any comments or concerns about this course of action or this draft letter, please let us know asap.

ECF 55-2 at 8–9. Sidestepping the significance of Mr. Ullman's October 8, 2020 letter, plaintiff contends Mr. Lewis' October 21, 2020 email is "business advice" and, consequently, falls outside the protections of the attorney-client privilege. The Court disagrees.

As an initial matter, Mr. Ullman's cease and desist letter–threatening litigation if USPS did not resume the (re)assignment of payments to Triumph–clearly prompted Mr. Lewis' internal October 21, 2020 email. Prior to Mr. King sending USPS's October 22, 2020 formal response to Triumph's counsel, the agency's in-house legal department, by and through Mr. Lewis, canvassed USPS executives and managers and their direct reports to weigh the potential impacts of the threatened litigation against the potential interruption to business operations. Counsel's assessment of litigation risks and operational consequences of the agency's action or inaction, and the communication of those same opinions to the client-agency in an effort to gather input and feedback, is quintessential legal consultation and advice.

Turning to Triumph's claim of an "at issue" waiver, the Federal Circuit adopted the following test to determine whether the attorney-client privilege is impliedly waived:

> (1) assertion of the privilege was a result of some affirmative act, such as filing suit by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense.

*Zenith Radio Corp. v. United States*, 764 F.2d 1577, 1579 (Fed. Cir. 1985) (citations and internal quotations omitted). In other words, "[t]he at-issue waiver applies when the privilege holders put the protected material 'at issue' [by] 'making assertions, the truth of which can only be assessed by examination of the privileged communications.'" *Blue Lake Forest Prod., Inc. v. United States*, 75 Fed. Cl. 779, 783 (2007) (citing cases). However, "[a] party cannot waive the attorney-client privilege

5

of its opponent[] by making allegations concerning the knowledge or intentions of the latter and then demanding the production of privileged legal communications when these allegations are denied." *Flintco, Inc. v. United States*, No. 10-178, 2012 WL 3276158, at *5 (Fed. Cl. Aug. 10, 2012).

In this case, defendant has not impliedly waived the attorney-client privilege or otherwise put the advice of USPS counsel "at issue." *Zenith Radio* and its progeny make clear the privilege can be waived only though USPS's affirmative acts, which are absent from the record presented: defendant has *not* filed a counterclaim *nor* plead an affirmative defense attributable to USPS's legal advice.[3] Simply because defendant's current legal defense is consistent with the actions taken by USPS personnel in reversing the now-contested assignments to Triumph and *subsequently* sanctioned by the agency's in-house legal department, does not contort USPS's actions as legally guided or otherwise driven. Factually, the sequence of events simply does not place the USPS Law Department's legal advice at issue or make it otherwise relevant to the core issues presented in this case.

Consistent with *Zenith Radio*'s third factor, moreover, plaintiff is not deprived of any critical evidence. Since USPS's Contracting Officers (COs) Antoine Slaughter and Shirley Lowery did not seek or receive legal advice in advance of (or immediately after) making the (re)assignment decisions at issue, *see* ECF 58-3 at 1–3, applying (or affirming) the attorney-client privilege in this case does not advantage or disadvantage either party. Plaintiff may explore the COs' and other USPS employees' states of mind and decision-making factors and processes during their depositions and at trial. To be clear, this includes any knowledge, awareness, belief, suspicion, or concern that PFS or Stageline would or might stop mail delivery if the USPS payments were not redirected to them rather than Triumph.

Next, contrary to plaintiff's assertion, the email distribution list even as subsequently expanded,[4] does not merit waiver of the privilege attached to the communication. As noted above, the recipients of the legal advice were USPS officials who were either dealing with Triumph or their counsel or otherwise impacted by COs Slaughter's and Lowery's payment reassignment decisions. These officials are not "lower-level managers"; instead, they are the designated USPS personnel (and their teams) responsible for managing USPS's logistics and supply management and other related needs and were impacted (directly or indirectly) by the evolving issues with

---

[3] In addressing the first two prongs of the *Zenith Radio* test, plaintiff cites the possibility defendant may–at some future date–assert an affirmative defense or counterclaim to recoup payments made under the now-contested initial assignments to Triumph. In support of this argument, plaintiff relies upon defendant's interrogatory response, wherein defendant is noncommittal regarding whether it will formally engage in affirmative litigation or simply defend against plaintiff's waiver argument. In seeking to pierce the attorney-client privilege by preempting defendant's potential litigation strategy, plaintiff implicitly concedes this issue is not ripe for judicial consideration.

[4] *See supra* note 2.

Triumph. *See In re SmithKline Beecham Corp.*, 243 F.3d 565, 2000 WL 1717167, at *3 (Fed. Cir. Nov. 1, 2000) (table) (to maintain attorney-client privilege, party must demonstrate recipients of claimed legal advice were "required or had the capacity to act upon the information distributed") (cleaned-up). Mr. Lewis' correspondence is clearly focused on how best to respond to Triumph's cease and desist letter and the potential legal consequences of any actions taken by USPS. There is no evidence in the record that this communication was drafted or disseminated to USPS personnel to address operational or policy issues beyond the Triumph cease and desist letter and the potential fallout.

Finally, Triumph maintains the email's "underlying facts"–divested from the imbedded legal assessment and advice–are not covered by the attorney-client privilege. Specifically, plaintiff quotes the following sentence from the October 21, 2020 USPS Law Department email: "PF[S] has assured us on several occasions that that is what would happen if we turned the assignment back on." Pulling from the immediately preceding sentence, plaintiff substitutes the following alleged representation for the second "*that*": "PF[S] will likely run out of cash and stop operating in the middle of our election mail and peak season operations if we pay Triumph." *Compare* ECF 55-1 at 24 *with* ECF 55-2 at 9.

Contrary to plaintiff's argument, these representations are inextricably intertwined with the litigation risk assessment performed by USPS in-house counsel based upon the information presumably provided by the client-agency or other sources and the legal advice rendered. As noted above, through discovery and at trial, plaintiff is welcome to inquire about the bases for COs Slaughter's and Lowery's and their respective teams' decisions (and motivations) to reassign and then revert the payments in issue. Plaintiff cannot short circuit this process by imputing information provided to or derived by USPS in-house counsel upon which legal advice was rendered *after* the challenged contract decisions were made. It is not enough that the decisions, once made, were not reconsidered. *See MLC Intell. Prop., LLC v. Micron Tech., Inc.*, 10 F.4th 1358, 1373 (Fed. Cir. 2021) ("Attorney-client privilege 'only protects disclosure of communications; it does not protect disclosure of the underlying facts' of those communications.") (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981)).

For the reasons set forth above, Plaintiff's Motion for a Judicial Determination of Privilege (ECF 55) is **DENIED**. Plaintiff shall **RETURN** or **DESTROY** (or substantively redact) the challenged document (ECF 55-2 at 9), along with copies of and notes about the document, and otherwise comply with the clawback provisions of the Protective Order (ECF 17) and Stipulated Clawback Agreement and FRE 502(d) Order (ECF 18) entered in this case, as well as RCFC 26(b)(5)(B).

8

It is so **ORDERED**.

                                                  Armando O. Bonilla
                                                  Judge